WALLACE, Judge.
Jacquaile Hill appeals his judgment and sentence for attempted second-degree murder. Because the trial court gave an erroneous jury instruction on the lesser-included offense of attempted manslaughter by act, which is one step removed from attempted second-degree murder, we reverse Mr. Hill’s judgment and sentence and remand for a new trial.
I. THE FACTS AND PROCEDURAL BACKGROUND
The State charged Mr. Hill with attempted first-degree murder based upon Mr. Hill’s conduct in shooting Marquis Robinson with a firearm on July 18, 2007, after a street brawl. At trial, Mr. Hill contended that he had been misidentified as the shooter and that a third person actually shot Mr. Robinson. The State argued that the evidence did not support a misidentifieation defense and that the issue for the jury to determine was “whether this shooting was first degree — attempted first[-]degree murder or was this attempted second[-]degree murder.... [D]id [Mr. Hill] have time to reflect from what he was doing[?] Did he — it’s a shooting or killing after consciously deciding to do that.”
The trial court instructed the jury on the primary offense of attempted first-degree murder and the necessarily lesser-included offenses of attempted second-degree murder and attempted manslaughter by act. The trial court also instructed the jury on two category 2 lesser-included offenses: aggravated battery and battery. The jury found Mr. Hill guilty of the lesser-included offense of attempted second-degree murder. The trial court sentenced him to a mandatory minimum sentence of twenty-five years’ prison based upon the jury’s finding that during the offense Mr. Hill discharged ' a firearm causing great bodily harm. See § 775.087(2)(a)(3), Fla. Stat. (2007).
On appeal, Mr. Hill argues that the trial court committed fundamental error by giving the jury an erroneous instruction for attempted manslaughter by act, which required the jury to find that he intended to kill Mr. Robinson to convict Mr. Hill of that offense. Accordingly, Mr. Hill concludes that he is entitled to a new trial. We agree.[1]
II. THE INSTRUCTION ON ATTEMPTED MANSLAUGHTER WAS ERRONEOUS
In State v. Montgomery, 39 So.3d 252, 256 (Fla.2010), the Supreme Court of Florida held that “the crime of manslaughter by act does not require proof that the defendant intended to kill the victim.” The court further held that giving the then-standard jury instruction for manslaughter by act, which required such proof, constitutes fundamental error when a defendant is convicted of an offense one step removed from that offense. Id. at 256-59. Recently, in Williams v. State, the court extended its rationale in Montgomery to conclude “that giving the standard jury instruction on attempted manslaughter by act — which also requires the jury to find the defendant committed an act intended to cause death — similarly constitutes fundamental error where the defendant is convicted of an offense not *298 more than one step removed from attempted manslaughter.” Williams v. State, 123 So.3d 23, 2013 WL 535449 (Fla. Feb. 14, 2013) (emphasis added)[2]; see also Mueller v. State, 100 So.3d 47, 48-49 (Fla. 2d DCA 2011) (holding same); Houston v. State, 87 So.3d 1, 2 (Fla.-2d DCA) (holding same), review dismissed, 73 So.3d 760 (Fla.2011).
Here, the trial court’s instruction on attempted manslaughter by act told the jury that the State had to prove beyond a reasonable doubt that Mr. Hill “committed- an act ... which was intended to cause the death of Marquis Robinson.” This instruction was erroneous because it included as an element of the offense that Mr. Hill “intended to cause the death of [Mr.] Robinson.” See Williams, 123 So.3d 23 at 25-26.
Defense counsel did not object to the instruction in the trial court. Thus, to be entitled to relief, Mr. Hill must demonstrate that giving the erroneous instruction constituted fundamental error. See id. at S101. Because attempted manslaughter by act is only one step removed from attempted second-degree murder — the crime for which Mr. Hill was convicted— Williams apparently compels the conclusion that giving the erroneous instruction during Mr. Hill’s trial constituted fundamental error. See State v. Abreau, 363 So.2d 1063, 1064 (Fla.1978) (“[T]he failure to instruct on the next immediate lesser-included offense (one step removed) constitutes error that is per se reversible.”). However, the State argues that because the trial court instructed the jury on “multiple applicable lesser included offenses,” giving the erroneous instruction for attempted manslaughter by act did not constitute fundamental error.
The State points out that the trial- court instructed the jury in Mr. Hill’s case on the lesser-included offenses of attempted second-degree murder, attempted manslaughter by act, aggravated battery, and battery. The State argues that “the jury was provided with 4 viable lesser included offenses besides the charged attempted first degree murder. Even removing attempted ... manslaughter [by act] from the mix, the jury still had 3 applicable lesser included offenses with proper jury instructions.” Accordingly, the State argues, there was no fundamental error because the jury had the option of picking from multiple lesser-included crimes and had options other than attempted second-degree murder.[3]
The State argues by analogy to a line of cases holding that when a trial court gives an erroneous manslaughter-by-act instruction as a lesser-included offense, no fundamental error occurs when the trial court also gives an instruction on manslaughter by culpable negligence and the defendant is convicted of second-degree murder.[4] The rationale of these decisions *299 is that the jury had the option of convicting the defendant of manslaughter by culpable negligence under a proper instruction that did not include intent to kill as an element of the offense. Thus giving the erroneous instruction on manslaughter by act did not constitute fundamental error because the jury had the option of convicting the defendant of a lesser-included offense that was one step removed from second-degree murder. See Barros-Dias v. State, 41 So.3d 370 (Fla. 2d DCA 2010); Nieves v. State, 22 So.3d 691 (Fla. 2d DCA 2009); Salonko v. State, 42 So.3d 801 (Fla. 1st DCA 2010); see also Guerra v. State, 44 So.3d 226 (Fla. 3d DCA 2010) (following Salonko); Cubelo v. State, 41 So.3d 263 (Fla. 3d DCA 2010) (following Salonko).
III. THE STATE’S ARGUMENT
In a per curiam opinion in Haygood v. State, 54 So.3d 1035 (Fla. 2d DCA 2011), quashed, 109 So.3d 735 (Fla.2013), this court questioned the reasoning in the line of cases relied upon by the State, including Barros-Dias, Nieves, and Salonko. We noted that these decisions conclude that because the jury received an instruction on manslaughter by culpable negligence, the jury was not “directed” by the erroneous instruction on manslaughter by act to find the defendant guilty of a greater offense and thus no fundamental error occurred as in Montgomery. In Haygood, we stated as follows:
Arguably, the evidence presented at trial is inconsistent with a theory of manslaughter by culpable negligence.... Although the evidence unquestionably supports the jury’s verdict finding [that] Mr. Haygood committed second-degree murder, it is impossible to speculate what the jury would have found had it been properly instructed that manslaughter by act does not require the intent to kill. 'In this regard, giving the flawed manslaughter by act instruction appears to run afoul of principles which the supreme court has articulated in Pena [v. State], 901 So.2d [781,] 787 [ (Fla.2005) ], and Montgomery, 39 So.3d at 257-59.
Id. at 1037 (emphasis added). However, based on this court’s precedent in Barros-Dias and Nieves, we affirmed Mr. Hay-good’s conviction and sentence. Id. Judge Altenbernd specially concurred and expanded on the majority’s comments as follows:
In this context, I do not believe that the fundamental error identified in Montgomery is rendered harmless by the instruction on manslaughter by culpable negligence.... I simply fail to see the logic by which a fundamental error of this kind becomes harmless merely because a jury receives an alternative instruction that has little or no application to the evidence presented at trial. I am also not convinced that “pardon power” analysis is the best approach to this particular problem. I recognize that this panel lacks the power to reverse and remand for a new trial under existing precedent, but I believe the case law needs a tweaking to permit a new trial in this type of case in order to fully comply with the supreme court’s holding in Montgomery.
Id. at 1038 (citation omitted). Ultimately, the Haygood court certified a question of great public importance to the Supreme Court of Florida as follows:
IF A JURY RETURNS A VERDICT FINDING A DEFENDANT GUILTY OF SECOND-DEGREE MURDER IN A CASE WHERE THE EVIDENCE DOES NOT SUPPORT A THEORY OF CULPABLE NEGLIGENCE, DOES A *300 TRIAL COURT COMMIT FUNDAMENTAL ERROR BY GIVING A FLAWED MANSLAUGHTER BY ACT INSTRUCTION WHEN IT ALSO GIVES AN INSTRUCTION ON MANSLAUGHTER BY CULPABLE NEGLIGENCE?
Id.; see also Pierre-Louis v. State, 98 So.3d 126 (Fla. 2d DCA 2012) (following Haygood and certifying the foregoing question to the supreme court).
Recently, the Supreme Court of Florida took up the question certified in Haygood, which it rephrased as follows:
IF A JURY RETURNS A VERDICT FINDING A DEFENDANT GUILTY OF SECOND-DEGREE MURDER, DOES A TRIAL COURT COMMIT FUNDAMENTAL ERROR BY GIVING AN ERRONEOUS MANSLAUGHTER BY ACT INSTRUCTION WHEN IT ALSO GIVES AN INSTRUCTION ON MANSLAUGHTER BY CULPABLE NEGLIGENCE AND THE EVIDENCE SUPPORTS ONLY A THEORY OF MANSLAUGHTER BY ACT?
109 So.3d 735, 736 (Fla.2013).
After reviewing its decision in Montgomery, the supreme court answered the certified question in the affirmative and quashed our affirmance of Mr. Haygood’s conviction and sentence. In so ruling, the court stated as follows:
Based on our decision in Montgomery, and the principles underlying that decision, we conclude that giving the manslaughter by culpable negligence instruction does not cure the fundamental error in giving the erroneous manslaughter by act instruction where the defendant is convicted of second-degree murder and the evidence supports a finding of manslaughter by act, but does not reasonably support a finding that the death occurred due to the culpable negligence of the defendant.
Id. at 741 (emphasis added). In reaching this conclusion, the court deemed it significant that there was no evidence that the victim’s death in the case before it resulted from culpable negligence, thus rendering second-degree murder as “the only offense realistically available to the jury under the evidence presented ... and the instructions given.” Id. at 742.
The majority in Haygood addressed the dissent’s contention that the court’s decision in Montgomery and its decision in the case before it were based on the jury pardon doctrine. The majority also addressed the dissent’s suggestion that “the finding of fundamental error in both cases is completely divorced from the question of whether any evidence would have supported a conviction of the lesser included offense of manslaughter.” Id. The majority explained as follows:
This decision is not based on the jury pardon doctrine and is not hinged on the right of the jury to issue a jury pardon despite the evidence. This decision is firmly founded on the longstanding principle that a defendant is entitled to have the jury correctly instructed on the crime charged and the lesser included offenses. As we have explained, where the erroneous instruction pertains to an element that is material to the jury’s deliberation and is in dispute, fundamental error occurs, as our precedent indicates, if that offense is one step removed from the crime for which the defendant is convicted. In this case, the erroneously instructed element was placed in dispute by the evidence; thus there was a basis on which the jury could find that the lesser included offense was proven.
Id. (emphasis added). The court further commented as follows:
[I]t is the province of the jury to find the facts supported by the evidence and, *301 based on proper instruction, apply those facts to the statutory elements required for conviction. The error in the manslaughter jury instruction prevented, the jury from being able to choose the true verdict in this case — a verdict based on the jury’s application of its fair assessment of the facts concerning Haygood’s intent to the proper elements of the offense as set forth in the manslaughter statute.
The dissent appears to be based on the assumption that the only justification for instructing the jury on manslaughter would be to provide an opportunity for a jury pardon. However, this puts the cart before the horse. The reason for properly instructing the jury on manslaughter is to enable the jury to determine what degree of crime, if any, is proven. The dissent also concludes that the evidence in this case proved only second-degree murder and, thus, the jury could not possibly have found manslaughter without aid of the jury pardon. That conclusion is unjustified. It is up to the jury to hear the evidence, find the facts, and apply the law to reach a proper and fair verdict. That process was short-circuited in this case by the faulty instruction.
The jury’s verdict of second-degree murder is proof that it necessarily found Haygood lacked intent to kill. But, because of the faulty instruction on manslaughter, the jury was deprived of the ability to decide whether Haygood’s lack of intent to kill, when considered with all the other evidence, fit within the elements of the offense of manslaughter. Based on the evidence presented, the only nonintentional homicide offense remaining for the jury’s consideration in this case was second-degree murder. The result of incorrectly instructing on a necessarily lesser included offense, or even jettisoning the requirement of instruction on necessarily lesser included offenses as the dissent suggests, is that the jury is deprived of all the tools it needs to reach a proper verdict in the case before it.
Id. at 743 (emphasis added).
IV. UNDER HAYGOOD, ERROR NOT CURED
During Mr. Hill’s trial, the prosecutor argued to the jury that “[t]he real question here is [sic] was it [attempted] first[-] or seeond[-]” degree murder, the issue being whether Mr. Hill formed a premeditated intent to kill. Although the prosecutor argued that the facts supported a conviction for first-degree murder, he implicitly acknowledged that the jury could find a lack of premeditation. Thus, even though the defense argued that Mr. Hill had been misidentified as the shooter, the State placed Mr. Hill’s intent at the time of the shooting at issue. Although the prosecutor conceded that the evidence would support a conviction for aggravated battery or battery, he argued to the jury that the evidence supported a verdict for a greater offense.
Accordingly, Mr. Hill’s intent, as well as the level of offense committed, was “material to the jury’s deliberation and [was] in dispute.” See Haygood, 109 So.3d at 742. And because the trial court improperly instructed the jury that attempted manslaughter by act requires the intent to kill, the only homicide offense not requiring a finding of intent to kill remaining for the jury’s consideration was attempted second-degree murder. The other lesser-included crimes on which the jury was instructed — aggravated battery and battery, which are category 2 lesser-included offenses — required proof of completely different elements than attempted manslaughter by act and were nonhomicide offenses. Mr. Hill was entitled to a proper instruction on attempted manslaughter by act “to enable the jury to determine what degree of crime ... [was] proven.” *302 Id. at 743. Although the evidence was sufficient to sustain the jury’s verdict for attempted second-degree murder, “the jury was deprived of the ability to decide whether [Mr. Hill’s] lack of intent to kill, when considered with all the other evidence, fit within the elements of the offense of [attempted] manslaughter.” Id. Accordingly, the trial court fundamentally erred in this case when it improperly instructed the jury on attempted manslaughter by act, which is one step removed from attempted second-degree murder, the crime for which Mr. Hill was convicted. As a result, Mr. Hill is entitled to a new trial at which the jury must be properly instructed.
V. CONCLUSION
For these reasons, we reverse Mr. Hill’s judgment and sentence and remand for a new trial for attempted second-degree murder.
Reversed and remanded.
SILBERMAN and BLACK, JJ, Concur.

. Mr. Hill raises additional arguments on appeal concerning events at trial and his sentence. Based upon our decision to reverse Mr. Hill’s conviction and sentence and to remand for a new trial because of the erroneous attempted manslaughter instruction, we do not reach those issues in this opinion.

. We note that Mr. Hill’s trial occurred in March 2009: before the supreme court issued its opinions in Montgomery and Williams.

. We note that in Mueller and Williams, the trial court had also instructed the jury on other category 2 lesser-included offenses and that it was held on appeal that the giving of an erroneous instruction for attempted manslaughter by act constituted fundamental error. Mueller, 100 So.3d at 48 (jury instructed on attempted first-degree murder, attempted second-degree murder, attempted manslaughter by act, aggravated battery, and battery); Williams v. State, 40 So.3d 72, 73 (Fla. 4th DCA 2010), quashed, 123 So.3d 23 (jury instructed on attempted first-degree murder, attempted second-degree murder, attempted manslaughter by act, and aggravated battery). However, Mueller and Williams do not directly address the State's argument on appeal in this case.

.Florida does not recognize the crime of attempted manslaughter by culpable negligence, and thus that was not a viable lesser- *299 included offense in this case. Williams, 123 So.3d at 27.